# EXHIBIT B

Case 4:24-cv-04051   Document 1-2   Filed on 10/22/24 in TXSD   Page 2 of 9

8/23/2024 11:07 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 91254575
By: Wanda Chambers
Filed: 8/23/2024 11:07 AM

CAUSE NO. _____

| | | |
|---|---|---|
| LAQUINCIA BARFIELD | § § | IN THE DISTRICT COURT OF |
| v. | § § | HARRIS COUNTY, TEXAS |
| CHAMPIONX CORPORATION | | ____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF THIS COURT:

**Preliminary Statement**

1.   This is a lawsuit for unlawful employment practices for race discrimination and retaliation to secure relief within the Texas Commission on Human Rights Act ("TCHRA"), as amended, Texas Labor Code § 21.001 and 21.051.  This lawsuit is also brought for damages under the claim of promissory estoppel.

**Parties**

2.   During all times mentioned in this petition, LaQuincia Barfield, ("Barfield") is Black.  Barfield resides in Houston, Harris County, Texas.

3.   During all times mentioned in the petition, Defendant, ChampionX Corporation ("Defendant") is a publicly held corporation.  It was and is still an employer under the laws of the state of Texas.  Based on information and belief, Defendant has more than 501 employees and engages in interstate commerce.  Defendant may be served through its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

**Jurisdiction**

4.   Jurisdiction is invoked pursuant to Texas Labor Code § 21.001 and 21.051, Rule 97(a) of the Texas Rules of Civil Procedure, and the Right to Sue Notice by the U. S. Equal

1

Employment Opportunity Commission ("EEOC") dated May 29, 2024. Barfield filed this lawsuit within ninety (90) days of receipt of the notice. All conditions precedent has been met.

5. Compensatory and punitive damages are available pursuant to TCHRA.

6. Declaratory, injunctive and equitable relief is sought pursuant to TCHRA.

7. Reasonable attorney's fees and costs may be awarded pursuant to TCHRA.

**Venue**

8. This lawsuit properly lies in Harris County, Texas because most of the facts giving rise this suit occurred in Harris County.

**Discovery Level**

9. Discovery in this case shall be conducted at Level 2.

**Factual Statement**

10. Barfield was employed by Defendant on or about May 6, 2022, as a Global Director/Talent Acquisitions. During all times relevant to this case, Barfield worked on occasion in the Sugar Land Office.

11. She had eighteen (18) years of experience in Human Resources/Talent Acquisitions. However, on August 3, 2023, Defendant terminated Barfield. It told her the termination was a part of a reduction in force (RIF). Defendant claimed her position was deemed redundant by Defendant. She disputes that claim.

12. In or about February 2023, a strange and unexplainable incident occurred. Paul Mahoney (Caucasian male), president of a business organization within ChampionX abruptly and without notice to her stated she was no longer with the company. However, she was still employed by Defendant, oblivious that she would not be months later. Barfield was shocked, embarrassed and humiliated. A

2

lot of her direct reports were on the call. Barfield immediately contacted Jordan Zwig (Caucasian male) about the incident. He did not understand the magnitude of what happened and began making excuses for Mahoney, claiming he *may* have made a mistake. Had that been Barfield making such a bold comment in front of his subordinate, she would have been summarily terminated. It is obvious to Blacks and non-Whites all the time, but when you have received the privilege for so long (since the birth of this country), you do not bat an eye when it comes your way. Barfield does not get to live or work by those standards. Even if it was true, it was not the proper place to share this very confidential information. Barfield does not believe that Mahoney was ever disciplined for his actions. The last time Barfield checked; his employment was still intact with Defendant.

13.     It was such an act of intent that Barfield reported it to Defendant's Chief HR Officer, Jordan who was her manager at the time. She specifically remembers that when she reported it, she was treated just like Zwig treated her, both Caucasian employees, giving Mahoney the benefit of the doubt. She told Jordan that she believed she was being targeted because she is Black. Jordan didn't deny the statement but stated it was an inadvertent oversight just like Zwig had done. Again, White privilege minimized her maximum. Defendant treated her like she was nothing. There was no investigation performed which was a material violation of Defendant's anti-discrimination policy. Mahoney later emailed her to apologize for what he had done, but Barfield could tell it was not an honest mistake. He did not have enough empathy or courage to talk to me one-on-one, even via Zoom if necessary. Because she did not know where the statement Mahoney made came from, she began

3

to believe it, even to a point of paranoia at times. Perhaps Mahoney knew something she did not, especially after she was terminated a few months later. She was passed over for a position that would have saved her from termination. Zwig repeatedly promised her that her position was not in jeopardy. Because of those promises, she did not apply for the lateral position nor did she seek employment outside of Defendant.

14. None of her peers was laid off in August 2023. Additionally, there was another position to which Barfield was qualified. She inquired about the position, but Barfield was not encouraged to apply. She did not apply after the many assurances by Zwig that her position was not in jeopardy. She would have applied had she known there would be a layoff. It is best to say nothing and do no harm but the reassurances by her manager harmed her.

15. In addition to management, many of Barfield's problems were caused by a team of underperformers, a team she inherited after she was hired. Though she was laid off, Barfield had to find positions for them. They were not laid off. They are all non-Black employees. Barfield was the only Black female director in HR and other departments.

16. Prior to the termination, Barfield had no negative performance evaluations or issues, no disciplinary action taken against her, no write-ups, or any other derogatory information in her file. She earned her full bonus for 2022 and at the beginning of 2023, which is an indication she was performing well.

17. Barfield believes she was terminated in part because race-based comments made by her manager, Madhuri Kumar (Asian/Non-Black female). In June

4

2023, Kumar stated Defendant needed to hire more Caucasian males in HR management. At the time, there was no underrepresentation of Caucasian males within HR Management. She expressed a desire to target a Caucasian male to fill a management position Director of Talent, Planning and Learning. The position was posted, but since I had not yet been notified that my position would be eliminated, she did not apply. The new position would have been a lateral move but she would not be included in the RIF. Though she expressed an interest, Kumar expressed her desire to select a Caucasian. She also had been repeatedly told by Zwig her position was secure multiple times.

18. Additionally, she believes she was terminated because she complained about being targeted because she is Black.

19. Defendant's reason(s) for terminating are pretextual. She did a reorganization that was targeted to eliminate her position because is Black and because she reported the racist act of Mahoney. Defendant never put her on notice but kept reassuring her position was not in jeopardy. Had she known it was, she would have applied for other positions within the company or started looking outside the company.

20. Defendant's actions of promising that her position was safe caused her to detrimentally rely on statements by Zwig who likely knew about the RIF at the time he was making the promises to Barfield. RIFs are typically known in advance. But he falsely assured her, causing her to not apply for other opportunities. If the humiliation and embarrassment were not already enough, Barfield had to find positions for her all-non-Black subordinates while they saw her pack of up things and leave. Her subordinates were not a part of the RIF.

21. Had Defendant not discriminated and retaliated against Barfield, she would have

5

continued to grow in the position, and move up in the company.

22. Barfield has no plain, adequate, or complete remedy at law to redress the wrongs experienced. She is now suffering and will continue to suffer irreparable injury from the treatment by Defendant.

23. Barfield suffered, is now suffering, and will continue to suffer emotional and physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of professional opportunities and other pecuniary losses as a direct result of Defendant's discrimination and retaliation.

24. Barfield will suffer future pecuniary losses as a direct result of the Defendant's discrimination and retaliation.

25. Defendant intentionally engaged in discrimination against Barfield with malice or reckless indifference to her rights under TCHRA, as amended. It also caused her to detrimentally rely on the repeated promises that her job was secure. She was damaged because of her reasonable reliance on the promises.

**Causes of Action**

26. Barfield incorporates as if re-alleged herein paragraphs 1 through 25.

27. Because race and because she was terminated after engaging in protected activity (without investigating it), implementing any progressive discipline, and allowing positions to pass her by repeatedly promising that her position was safe, Defendant's actions willfully and intentionally violated TCHRA and warrant punitive damages.

28. Barfield is also liable for promissory estoppel because she reasonably and detrimentally relied on promises Defendant knew were not true. This caused her to experience damages.

**Prayer for Relief**

29. Wherefore, Barfield prays that this Court:

6

a. declare the conduct engaged in by Defendant to be in violation of her rights;

b. enjoin Defendant from engaging in such conduct;

c. reinstate her to the position she held at the time of termination or comparable position, receiving at the time of termination plus any raises she would have received and other employment benefits;

d. order back pay of $75,000;

e. award prejudgment and post-judgment interest;

f. award her reasonable attorney's fees and costs; and

**g.** grant such other non-monetary relief as it may deem just and proper.

## Jury Trial

29. Barfield demands a jury trial.

Respectfully submitted,

/s/ *Victoria L. Plante*
VICTORIA L. PLANTE
Texas Bar No. 00798436
PLANTE LAW FIRM, P.C.
5177 Richmond Avenue Suite 1140
Houston, Texas 77056
Telephone: (713) 526-2615
Facsimile: (713) 513-5176
Email: victoria@plantelawfirm.com

7

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Victoria Plante on behalf of Victoria Plante
Bar No. 798436
victoria@plantelawfirm.com
Envelope ID: 91254575
Filing Code Description: Petition
Filing Description: Plaintiff's Original Petition
Status as of 8/23/2024 11:10 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| Letitia Carter | | office@plantelawfirm.com | 8/23/2024 11:07:14 AM | SENT |
| Victoria Plante | 798436 | victoria@plantelawfirm.com | 8/23/2024 11:07:14 AM | SENT |